## HEGEMAN *vs.* JOHNSON and others.

*It seems* that a judicial sale, by a referee or sheriff, or other officer of the court, is not within the provisions of the statute of frauds, requiring the contract of sale to be subscribed by the purchaser, or his agent.

If it be, however, the written report or certificate of the referee, or the note or memorandum made by the auctioneer, will satisfy the provisions of the statute, and remove all objection to the validity of the contract to purchase, on the ground that no written contract was subscribed by the purchaser.

Where one purchases property at a judicial sale, as the agent of another, and in his name, but without authority from the principal, and consequently the contract is not binding upon the latter, the agent is not personally liable in an action upon the contract; nor can he be compelled, by the exercise of the equitable jurisdiction of the court, to perform it as his own.

THE defendant Jeromus J. Johnson executed a mortgage on three separate parcels of ground at Brooklyn, to Elizabeth S. Champlin and William G. Jones, executrix and executor of Elizabeth De Peyster, deceased, and afterwards executed an assignment to the defendants John L. Lefferts and David Thurston, for benefit of the creditors. The mortgage was assigned to the plaintiff for the benefit of Horatio G. Onderdonk, Esq. the plaintiff's attorney, who is in fact the holder and owner of the mortgage. This action was brought to foreclose said mortgage, and the usual judgment of sale was entered. On the 18th of September, 1860, the premises were exposed for sale in separate parcels by the referee named in the judgment, under written terms of sale. Mr. Onderdonk bid upon such sale in the name and professedly as the agent of his daughter, Sarah Onderdonk, and the second parcel was struck down to her for a price which, with the sum for which the first parcel had been sold, was more than sufficient to pay the amount due on the mortgage. Neither H. G. Onderdonk nor the said Sarah Onderdonk signed the terms of sale, or paid the ten per cent of the purchase money required to be paid down; but the auctioneer at the time of sale made in his sales book an entry containing a description of the premises, the name of Sarah Onderdonk, and the price. Sarah Onderdonk having refused to complete her pur-

Hegeman *v.* Johnson.

chase, the referee furnished to the defendants Lefferts and Thurston, a certificate stating that such sale had been made to her, and that she had neglected to complete the purchase; that he had demanded of H. G. Onderdonk, as agent of said Sarah Onderdonk, to receive a deed of the premises so purchased by her, and pay the purchase money, which he refused to do. A motion was then made by Lefferts and Thurston, before the county court of Kings county, for an order requiring her to complete her purchase. Upon the hearing of such motion, Mr. Onderdonk appeared for her, and produced, in opposition to such motion, her affidavit, in which she denied that her father had authority to purchase the premises for her. On the 5th of January, 1861, the county court denied the motion without prejudice. Thereupon Lefferts and Thurston, upon affidavits showing the above facts, and upon the referee's certificate, the judgment roll, terms of sale, and proceedings in this action, moved the county court for an order requiring the said Horatio G. Onderdonk himself to complete such purchase. After hearing such motion, the court, on the 26th day of March, 1861, made an order requiring Mr. Onderdonk to complete such purchase, or that an attachment issue against him; from which order he appealed to this court.

*H. G. Onderdonk*, appellant, in person. I. There was no purchase, by Sarah Onderdonk, of the property. (1.) These papers show it. (2.) It has been decided on the motion to compel her to complete the sale.

II. There has been no purchase by the defendant H. G. Onderdonk, on his own account, or for himself. (1.) He bid for another, but without authority. (2.) No *contract* was made by him personally, or through the auctioneer. (3.) The bidding bound no one, under the statute of frauds. It never became a legal contract to buy, not being in writing and signed by the party to be bound. The auctioneer made none. The referee's certificate is not such a writing. Such a con-

tract, if made, must be made at the time of the sale. (4 *John. Ch.* 663. 11 *Paige,* 405. 10 *id.* 526. 4 *Kern.* 584.)

III. To enforce a specific performance against an unauthorized agent, there must be a legal contract by which to buy, within the statute. A *judicial sale* is no exception; it is only an authority of the court to sell, and does not dispense with the statutory requisites to make a sale binding on the parties.

IV. If this sale can be enforced against H. G. Onderdonk, it must be either, (1.) Because of his *contract* to buy, which he never made; or, (2.) As a *penalty* for not buying on his own account, but assuming to buy for another without authority.

V. If an unauthorized bidder is liable at all, under such circumstances, it is in an action on the case for *deceit,* in damages, and not for specific performance of a contract he never made. (*Walker* v. *Bank of the State of New York,* 13 *Barb.* 639. *Johnson* v. *Smith,* 21 *Conn. R.* 627. *Story on Agency,* 5th ed. 304. 1 *Pars. on Con.* 57–59. 1 *Story on Con.* 239. *Chit. on Con.* 5th ed. 227.)

*Henry Nicoll,* for the respondents. I. There was a valid sale to Sarah Onderdonk, provided H. G. Onderdonk had authority to purchase for her. (1.) A judicial sale is not within the statute of frauds. It is made by the court through its officers. (*Fuller* v. *Moore,* 35 *Penn. R.* 479. *Atty. Gen.* v. *Day,* 1 *Ves. sen.* 221. *So also in Blagden* v. *Bradbear,* 12 *Ves.* 472.) And the same rule was expressly held by Chancellor Walworth in the case of the *National Fire Insurance Company* v. *Loomis,* (11 *Paige,* 431.) (2.) If a judicial sale is within the statute of frauds, then the referee's report or certificate is a sufficient memorandum, within the statute. It is not necessary that the report or certificate should be signed at the time of the sale. This was expressly ruled in the *National Fire Insurance Company* v. *Loomis,* (*supra.*)

Hegeman *v.* Johnson.

II. The entry in the sales-book, by the auctioneer, was sufficient, under the statute. (*Pinckney* v. *Hagadorn*, 1 *Duer*, 90. *McComb* v. *Wright*, 4 *John. Ch.* 659. *First Baptist Church* v. *Bigelow*, 16 *Wend.* 28.)

III. H. G. Onderdonk having, without authority, assumed to act for Sarah Onderdonk, is himself personally liable. (1.) Conceding that he is liable in some form, no other way of proceeding than that adopted by the court below can be suggested. (2.) Onderdonk, being an attorney, is an officer of the court; he has submitted himself to its direction as a purchaser; he is, in fact, the real party in interest, and owner of the mortgage; he must therefore be considered as fully before the court. The court may deal with parties in a summary way, and will compel them to do equity or justice in a matter connected with an action or proceeding, upon motion, and without putting the party injured to an action. Moreover, in this case, there is no person who could bring an action against Onderdonk. (*Lansdown* v. *Elderton*, 14 *Ves.* 513, *and cases cited.* 2 *R. S.* 535, 1*st ed.*) (3.) It is the established rule in our state, that if one assumes to make a contract for another without authority, he is himself personally liable, and is to be treated as in effect the party who makes the contract. This has been expressly held in *Dusenbury* v. *Ellis*, 3 *John. Cas.* 70;) *Rossiter* v. *Rossiter*, (8 *Wend.* 494;) *Palmer* v. *Stephens*, (1 *Denio*, 480;) *White* v. *Skinner*, (13 *John.* 307;) *Meech* v. *Smith*, (7 *Wend.* 315;) *Cunningham* v. *Soules*, (*Id.* 106;) where Judge Platt says, "The law is well settled that one person cannot seal for another without express authority. And it is also settled, that if a person execute a bond as attorney for another, without authority, such person so assuming to act is personally bound as though he had covenanted in his own name, simply." ·

*By the Court*, EMOTT, J. I am inclined to think that a judicial sale by a referee or sheriff, or other officer of the court, is not within the provisions of the statute of frauds.

(*See* 1 *Vesey*, 221 ; 12 *id.* 472.) If it be, however, the written report or certificate of the referee, or the note or memorandum made by the auctioneer employed by him as in the present case, would satisfy the provisions of the statute, and remove the objection on that ground to the validity of the contract to purchase, made by Mr. Horatio G. Onderdonk in the name, and professedly as the agent, of his daughter. In the *National Fire Ins. Co.* v. *Loomis*, (11 *Paige*, 431,) Chancellor Walworth expressed such an opinion, in a case very similar in that respect, although the point was not decided.

We are therefore to treat this contract as not open to any such legal exception as that suggested from the statute of frauds. But we must also consider the purchase as made by Mr. Onderdonk as the agent of Sarah Onderdonk and in her name, without authority from her, and as not binding upon her. The question now is whether this individual is personally liable upon the contract, or can be compelled to perform it himself. I have come to the conclusion that he cannot, with some regret I confess, under all the circumstances of this case.

The principle is stated in the books, and sometimes without qualification, that where a person undertakes to do an act for another, if he does not possess any authority, or if he exceeds his authority, he will be personally responsible to the person with whom he deals. (*See Story on Agency*, § 264, *and cases cited in note.*) But the farther question arises in such cases, what is the character and extent of this liability, and what remedy is to be sought against the delinquent.

In the English courts the rule in such cases is settled to be, generally, that the person is not to be made liable on the agreement or contract itself, but in a special action for the damage sustained by his representing himself as agent untruly and without authority. (*Polhill* v. *Walter*, 3 *B. & Ad.* 114. *Jenkins* v. *Hutchinson*, 13 *Jur.* 763. 1 *Pars. on Contr.* 57, 58, *and note.*) There is however a class of cases in the courts of this state, in which it has been held that un-

Hegeman *v.* Johnson.

der certain circumstances a person assuming to act as agent, and making a contract as agent for another, without authority, may be held upon the contract itself, and compelled personally to answer or perform it, as if it were his own.

This rule has been felt to be somewhat anomalous, and difficult to reconcile with the theory of contracts. It rests upon authority, however, and in cases which fall within the authorities, it is too well settled to be disturbed, at least by this court. (*See Dusenbury* v. *Ellis*, 3 *John. Cas.* 78; *White* v. *Skinner*, 13 *John.* 307; *Meech* v. *Smith*, 7 *Wend.* 315; *Rossiter* v. *Rossiter*, 8 *id.* 494, 499; *Feeter* v. *Heath*, 11 *id.* 477; *Palmer* v. *Stephens*, 1 *Denio*, 480.) It will be found upon examination that all these cases in our courts, except those of *Meech* v. *Smith*, (7 *Wend.* 315,) and *Feeter* v. *Heath*, (11 *id.* 477,) are cases of written contracts. *Meech* v. *Smith* was the case of an agreement not in writing, for the transportation of a quantity of flour at a certain price, and to be paid in a special manner, in part by the settlement of an old debt. The agent had authority to contract for the transportation company for the carriage of the flour, but not as he did for the application of the price towards a former debt of some of the partners in the carrying business to the owner of the flour. The flour was transported, and the price for the carriage earned, and thus the case presents two features; first, that there was an excess and not a total want of authority; and second, that the contract was executed. *Feeter* v. *Heath* contains the same distinctive features. The question there, as to the liability of the agent, arose upon a verbal contract made by him for the purchase of stone. He was directed by his principals to procure stone for a certain purpose, but he exceeded his authority in quantity and price. The chancellor, in giving the opinion in the court of errors, cites *Pothier* upon this point, and says, if I authorize another to buy a horse for me for $100, and he buys one for $110, he is liable to the vendor for the price, but he may insist upon my taking the horse

and paying him the $100. This supposed case, as well as the case then before the court, was also, as will be seen, a case of an excess, and not a total want of authority. What is more material, they are cases of executed agreements— sales completed by delivery.

The other cases in the courts of this state, as I have said, were cases of written contracts ; and without recapitulating them, it will be found that this class of cases, in which a person contracting as agent has been held personally upon a written contract as if it were his own, are cases where he subscribed his own name, as well as that of his alleged principal. For instance, in the early case of *Dusenbury* v. *Ellis*, (3 *John. Cas.* 70,) the contract was signed "For Peter Sharpe, Gabriel Dusenbury, attorney." Judge Selden says, in *Walker* v. *Bank of the State of New York*, (5 *Seld.* 582, 585,) that the rule or practice of holding the agent bound by the contract, in the same manner as though it were made in his own behalf, was limited to written contracts. With deference to so high an authority, however, the cases which have just been alluded to would seem to show that this remark was too broad. On the other hand, in the opinion delivered in the same case, of *Walker* v. *Bank of the State of New York*, in the supreme court, by Judge Hubbard, and in which, by the way, Judge Selden concurred, (*see* 12 *Barb.* 636, 639,) the remark occurs that the rule is limited to contracts not in writing. This also needs qualification, and the case itself supplies it.

The theory upon which the rule is based is, that the agreement supposed or proved, is such that all which relates to the agency may be stricken out and a complete contract left. In unwritten contracts, the rule is limited to such as are executed, and no case can be found where an agent who assumed without authority to make a verbal *executory* agreement in the name of and expressly for another, was called to perform, or made liable, directly, upon that contract personally, while

Hegeman *v.* Johnson.

it remained executory. What liability he may incur, or what form of remedy he may be liable to, is another question.

In respect to written contracts, the rule is limited with equal distinctness to cases where the agent signs his own name, although he describes himself as an agent. This description being surplusage, may be stricken out, and a personal obligation will remain. But no such process, and no rational method of construction or interpretation will change a written agreement made by one person into the contract of another not named or described in it, nor signing his name to it at all. And therefore a contract in writing, to which a person has without authority affixed the name of another, he himself not being mentioned, cannot be made or treated as his agreement, or as binding as a contract upon any one.

The agreement in the present case, whether it be regarded as verbal, and still valid as an exception to the statute of frauds, or as made in writing by the auctioneer's note or the referee's report, falls without these rules. In the former case it is wholly executory, and in the latter it is not signed by Mr. Onderdonk as agent for his daughter, but is made in her name exclusively. I am compelled to the conclusion that Mr. Onderdonk could not be sued directly upon such a contract as if it were his own, and therefore he cannot be compelled by the exercise of our equitable jurisdiction to perform it as his own. Whether any other remedy can be made available, is a question upon which we are not called upon to give an opinion.

This order should be reversed, without costs.

Judges BROWN and SCRUGHAM concurred in this opinion.

[ORANGE GENERAL TERM, September 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]