## United States District Court—Eastern District of Michigan.

### THE KATE WILLIAMS.

*Proctor's Liability—Marshal's Return—Warranty.*

A court of Admiralty may compel a buyer at a judicial sale to complete his purchase by payment of the money.

An irregularity in the marshal failing to make return of his writ with report of his doings thereon, is healed by an order confirming the sale.

An order to pay money into court, served upon a purchaser in default, is sufficient, though his name be not mentioned in the order.

A proctor may be personally held for his bid if it be not known to the marshal for whom he is acting.

The words "her boats, tackle, apparel, and furniture," used in the writ and published notices of sale, imply no warranty of a complete outfit, nor even that all the property that once belonged to the vessel is in possession of the marshal; especially where he sells her "as she lies."

On motion for an attachment for contempt.

At the time the tug was seized upon the attachment issued in this cause, most of her apparel and furniture was in the hands of one Demass, and was never taken possession of by the marshal. A decree having passed upon the original libel, a writ of *venditioni exponas* was issued, commanding that the tug, her boats, tackle, apparel, and furniture, be sold on the 26th day of Dec., 1876. Upon this date the marshal offered the tug for sale at auction, and struck her off to Julian G. Dickinson for four thousand dollars. The deputy marshal, Mr. Blanchard, as he offered her for sale, announced publicly that he sold her "as she was," naming the property that had been seized by him as such officer, and would undertake to deliver nothing but what was upon the vessel. His announcement that he sold the tug as she then lay, was understood by Mr. Dickinson and by many others who were present at the sale. On the 17th day of January an order was made by Judge Withey, then holding this court, reciting the regularity of the proceedings, and confirming the sale. Application was repeatedly made to Mr. Dickinson to pay the money, and finally a bill of sale was executed and tendered him, with a demand for the purchase price, which he neglected to pay, but asked further time, and promised to pay whenever an order of distribution should be entered. Subsequently, but not until about the 20th of February, he claimed that his client, Mr. Murphy, for whom he had bid off the property, refused to accept the bill of sale, unless all the apparel and furniture originally belonging to the boat was turned over to him. There was about $300 in value of this

missing. On the 13th day of February, a further order was made that the proceeds of the sale of the said tug be forthwith paid into the registry of the court. A copy of this order having been served upon Mr. Dickinson, motion was made for an attachment for contempt in refusing to comply with it.,

Brown, J.: The power of the court, the practice of which is analagous to that of a court of Chancery, to compel a purchaser to perform his undertaking and pay the amount of a bid, was admitted upon the argument, and seems to be well settled by the authorities : Rohrer on Judicial Sales, secs. 152 to 146; Wood vs. Mann, 3 Sum., 318; Brasher vs. Cortland, 2 Johns. Chan., 305; Requa vs. Rea, 2 Paige, 339; Cazet vs. Hubble, 36 N. Y., 677. The purchaser in cases of this kind is regarded as making himself so far a party to the original proceeding as to render himself amenable to the process of the court to compel obedience to its orders.

It was claimed, however, in this case, that the sale was irregular, for the reason that the marshal had made no return of his writ into court, and no report of sale had been filed. Without undertaking to say whether the mere omission to file the writ and the report of sale would constitute such an irregularity as would vitiate this proceeding, it is sufficient to say that such irregularity, if it existed, was healed by the order of confirmation : 2 Dan. Ch. Prac., 1279; Todd vs. Dowd, 1 Met. (Ky.), 281.

It is further claimed, that, as the order was general, and not directed to any particular person, it must be

presumed to have been made under rule 41, and intended to operate only upon the marshal; but I apprehend such an order would operate upon any person upon whom it was served, and who was actually in default for failing to pay over the purchase price.

Further objection is made, that this court has no power to attach the bidder, inasmuch as he was acting as the agent of another party in making the purchase. Although he was a proctor of this court, it does not appear to have been known to the marshal at the time of the sale, at least by any information received by him, that he was not acting in his own behalf. After the sale was completed, he was asked to whom the bill of sale should be executed, and he replied that he would let the marshal know in a short time.

There are three cases where an agent may be held personally responsible upon his contracts :

1. Where it is not known to the other party that he is acting as agent at all.

2. Where the fact of his agency is known, but the name of his principal is not disclosed.

3. Where he exceeds his authority as agent.

Story on Agency, sec. 264–268. While, in this case, the deputy marshal may have suspected, or even have been satisfied in his own mind, that the buyer was acting only as agent, this knowledge could only have been derived from the fact that he was known as an attorney-at law. There was nothing else to put him upon inquiry. Whether this fact was sufficient to apprise him of his

character is immaterial, for it is not disputed that he did not learn the name of his principal until some considerable time after the sale. In his affidavit, Mr. Murphy swears that he authorized Mr. Dickinson to bid for him, upon the belief and understanding that said tug, with all her boats, tackle, apparel, furniture, and appurtenances were included in the sale. If this be so, Mr. Dickinson should not have made the bid, as he was fully apprised at the time that he was buying only such property as was upon her. The marshal is certainly not chargeable with this fault. I deem this of little consequence, however, as Mr. Murphy was present at the sale, heard the announcement of the marshal that he sold her as she was, and interposing no objection to the bidding of his attorney, thereby ratified his action. It is further claimed that the purchasers were misled by the published notices of sale which designated the tug her "boats, tackle, apparel, and furniture," as the property to be sold. These words, however, imply no warranty of a complete outfit, nor even that all the property that once belonged to her is still on board or in possession of the marshal. Where the announcement is made that the tug is sold as she is, it is incumbent on the buyer to ascertain her actual condition before bidding, and any loss occasioned by his failure to do so is imputable to him. As no claim of misapprehension of the terms of sale was made in this case until nearly two months after the sale had taken place, and after repeated demands and promises to pay, there is reason at least for saying that no such misapprehension existed. While it is quite possible that Murphy might be held responsible as the

principal in this purchase, it does not follow that the agent may not also be made liable. This is one of that not infrequent class of cases where the other party may look to either the principal or the agent.

The case is very similar to that of Brasher vs. Cortland, 2 Johnson's Chan., 505, where an attachment was moved for against one Clay for refusing to complete a purchase made on a master's sale. Respondent showed cause, by stating that he was requested by one Van Cortlandt to become a purchaser in his behalf; that it was then represented to him that it was intended to appeal from the decree, and the request for him to purchase was to prevent the possibility of loss, in case the decree should be confirmed, and that he became a purchaser from motives of friendship for Van Cortlandt. Chancellor Kent decided that he must complete his purchase.

It is not necessary here to determine whether the purchaser be entitled to such of the furniture and apparel of the tug as was in the possession of Demass at the time of the sale. Under General Admiralty Rule 8, the marshal could probably have compelled the delivery to him of this property, but not having done so, it is very doubtful whether it is not now too late; still, it is no reason for the bidder refusing to complete his purchase. The announcement was distinctly made and understood, that the sale embraced only the tug and such of her equipment as was actually upon her, and he cannot now question the proceedings by reason of failure to deliver other property. While it is true, as Murphy swears, that he may have expected the marshal

to deliver all the tug's appurtenances, which it seems he had seen in Livingston's warehouse not long before, he had no reason to expect it, and took his chances of disappointment.

The practice of withdrawing from purchases thus made has become so common as to operate as a serious inconvenience. In several cases re-sales have been ordered at a greatly increased charge for advertising and ship-keeping. The attendance, too, is usually much less numerous at a re-sale, and the bidding less spirited, and the property is often sacrificed for much less than it brought at first. As observed by the Chancellor in' Lansdown vs. Eldon, 14 Vesey, 512: "A purchaser ought not to be permitted to baffle the court in this way." I think the proper practice is, for the marshal, before adjourning the sale, to require an instant deposit of at least one-tenth of the amount of the bid, giving the purchaser twenty-four hours to raise the residue. The purchaser would ordinarily prefer to make good his bid rather than incur a forfeiture of his deposit.

While in this case the purchaser may have been guilty of no fraud or moral wrong, and probably acted with mere inadvertence, still, as the sale was fairly made, I think it a case where the court is properly called upon to enforce it.

An order will be entered that the purchaser pay the amount of his bid in six days, or that an attachment issue.

*F. W. Clark* and *Wm. A. Moore* for the motion.

*R. A. Parker* contra.