McCarter *v.* Finch.

ROBERT H. McCARTER, receiver,

*v.*

EDWARD L. FINCH and HENRY FINCH, trading as L. R. Finch's Sons.

This court has jurisdiction, by summary proceedings upon petition, to compel the payment by a purchaser from an officer of the court of the agreed price of goods sold and delivered.

Heard on petition, order to show cause, answer and testimony taken orally.

*Mr. Frederic W. Ward,* for the petitioner.

*Mr. James B. Vredenburgh,* for the respondents.

PITNEY, V. C.

The petitioner is a receiver appointed by this court of the assets of a corporation named the Sherman & Lyon Company, upon proceedings in insolvency, and as such receiver made a written contract with the respondents for the sale to them, at a price named, of all the assets of the insolvent company. The contract declared that it was subject to the approval of the court, and such approval was had. The time fixed by the terms of the contract for payment having passed, the receiver applied by petition for an order on the respondents to show cause why they should not be ordered to pay the purchase-money.

In proper season the respondents objected to the jurisdiction, and the question was reserved for consideration after the taking of evidence upon final hearing.

The objection, which was urged with spirit and earnestness, was twofold. *First.* Because a suit in equity cannot be prosecuted by petition, but must be by English bill and subpœna. *Second.* Because the damages are unliquidated, and this court has no jurisdiction, even by bill, to ascertain the same against the protest of the respondents. In other words, that the suit lacks any equitable element.

In regard to the first objection : It seems to be settled by a long course of practice that a person who makes a contract with an officer of a court of equity respecting the subject-matter of a suit in that court, thereby becomes so far a party to the suit as to render him liable to be proceeded against in a summary manner, by motion, as to all matters arising out of such contract. *Lansdown* v. *Elderton, 14 Ves. 512 (1808)*, where are cited *Young's Case,* in the court of exchequer, and *Andre* v. *Kaye,* in chancery (November, 1791), in each of which an order was made upon a purchaser from a master of the court to complete his purchase or be committed ; and Lord Eldon, on their authority, made a like order in the reported case. This authority was followed by Chancellor Kent in *Executors of Brasher* v. *Cortland, 2 Johns. Ch. 505.* In *Requa* v. *Rea, 2 Paige 339,* Chancellor Walworth acted upon the same principle in summarily setting aside a master's sale in foreclosure, at the instance of the complainant and against the protest of the purchaser.

The doctrine of the New York cases just cited was approved by the court of appeals of New York in the case of *Astoin* v. *Hubbell, 36 N. Y. 677,* and the purchaser at a sale under foreclosure was compelled by summary proceedings to complete his purchase and pay over the balance of unpaid purchase-money.

Mr. Justice Story, in *Wood* v. *Mann, 3 Sumn. 318, top,* sanctioned the same practice. There, under a decretal order of the court, lands were sold by the master, and the purchaser, in conformity with a further decretal order, gave security to the master in the shape of a covenant, with a surety, to pay the purchase-money within fifteen days. The money was not paid, and summary proceedings were taken against the purchaser and his surety. And it was held that " whoever makes himself a party

to the proceedings of a court of equity, and undertakes to do a particular act under its decretal orders, may be compelled to perform what he has undertaken ; that a court of equity may by attachment compel a purchaser at a sale by the master to complete his purchase by paying the purchase-money ; and that a surety who has made himself a party to the proceedings is in the same predicament with the purchaser and may be proceeded against by attachment ; and that it made no difference that the surety was not aware that in becoming so he subjected himself to the summary process of the court."

In *Shann* v. *Jones, 4 C. E. Gr. 251,* the same doctrine was asserted by Chancellor Zabriskie, using this language : "A purchaser at a sheriff's sale, when not a party to the original suit, is held to be made a party by the purchase so far as to be subject to the jurisdiction of the court on questions arising from the sale. Upon the same principle, he may be held to have a standing in court sufficient to be heard upon the subject of the disposition of the purchase-money while still in court, when a part has been paid by him and he claims a right to have it restored."

The same doctrine was applied in *Silver* v. *Campbell, 10 C. E. Gr. 465,* where a purchaser at sheriff's sale was compelled, upon a simple order to show cause, to complete his purchase.

And again, in *Bowne* v. *Ritter, 11 C. E. Gr. 457,* where Chancellor Runyon says : " The ordinary method of compelling a purchaser, under circumstances such as are presented by this case [purchase from a master], on a sale in partition to complete his purchase, is by order to show cause why an attachment should not issue against him as for contempt," citing authorities.

Vice-Chancellor Van Fleet reiterated it in *Snyder* v. *Blair, 6 Stew. Eq. 208* (at *p. 210*).

And Mr. Justice Depue, speaking for the supreme court, in *Townshend* v. *Simon, 9 Vr. 239* (at *p. 241*), says : " It may be assumed as an established doctrine of the court of chancery, that a purchaser under a decree, by the act of purchase, *submits himself to the jurisdiction of the court as to all matters connected with the sale which relate to him in the character of purchaser.* The sale may be set aside by an order in the original cause, without

a new bill being filed, and the purchaser may appeal from such order, though he be not a party to the cause. It has also been held that the purchaser may be compelled to complete the purchase by a summary order in the original cause," citing authorities for each proposition.

The latest illustration of the doctrine in New Jersey is the case of *Boorum* v. *Tucker, 6 Dick. Ch. Rep. 135,* where a petition was filed by the complainant in a foreclosure suit against purchasers at sheriff's sale, praying that they should be compelled to complete their purchase by paying the amount bid. The answer set up that the title was imperfect, and the question of title was elaborately discussed and a decree for payment was made, which was affirmed on appeal in *Hartshorne* v. *Boorum, 7 Dick. Ch. Rep. 587.*

The first point must be overruled.

The second point is that the nature of the right to be enforced is such that an English bill would not lie, and that the receiver must proceed by action at law. The argument in support of this position is that there is no equitable element in the receiver's cause of action, or other reason why the questions in litigation should be tried in this court, and hence that the receiver should be relegated to the proper jurisdiction, namely, a court of law.

The only distinction between the present case and the cases already cited is that the present is a proceeding to compel payment for the purchase price of personal property while those cited are for the price of real property.

I am unable to find, in either of the authorities above cited, that the jurisdiction of the court was put upon the ground that the action was equitable in its nature, and therefore fit for the court of chancery. On the other hand, the language used by the judge is that power to deal summarily with the purchaser from an officer of the court arises out of the nature of the case and the situation of the parties, and the order in each case was simply that the defendant pay the money which, by his contract, he had agreed to pay.

The defendant relied mainly upon two cases—one decided in the court of errors and appeals and the other in this court. The

McCarter v. Finch.

first is *Palys* v. *Jewett, Receiver, 5 Stew. Eq. 302*. The petitioner there had been injured by collision with a railway train operated by the receiver, and petitioned the court for relief. The case was tried upon its merits, and the relief denied for lack of merit. The petitioner appealed, and the court of errors and appeals differed from the court below upon the merits and granted him relief, but accompanied it with a protest against the exercise of such jurisdiction by the court of chancery, and based its action, in finally giving relief, upon the ground that there had been no appeal by the petitioner from the order of the court below in refusing him permission to sue at law. I have always understood that the court was mistaken in supposing that there had been such an application for leave to sue at law and a refusal by the court below. Be that as it may, the ground upon which the court based its opinion that this court ought not to have entertained jurisdiction was that this court could not, by reason of defective machinery, properly ascertain the damages.

On *p. 305* the learned chief-justice says : "The general rule undoubtedly is that damages, as such, will not be ascertained in equity. Chief-Baron Gilbert, in his '*Forum Romanum*,' thus expressed this inability. His words are : 'And it is a general rule that whenever the matter of the bill is merely damages, there the remedy is at law, because the damages cannot be ascertained by the conscience of the chancellor.' This is the language of the decisions, both ancient and modern. It is true that there are exceptions to this rule, but those exceptions plainly show its generality and force. Such exceptions rest on the ground of a convenience very nearly akin to necessity."

He then cites instances in which the court ascertained unliquidated damages in cases for specific performances of contracts, and then (at *p. 311*) sums up the result thus : "It will therefore be observed, from this brief review of the more important of the authorities, that even when a contract has been broken, it was a general rule of equity, as it existed originally in England and at all times in this state, that where damages were of an intangible character they could not be admeasured under the authority of the chancellor. Nor am I aware that, with respect

McCarter *v.* Finch.

to torts to the person, it was ever so much as suggested within such jurisdictions that the compensation to be awarded in consequence of such malfeasance could, by force of any conjuncture of circumstances, be ascertained by a court of equity."

Then (at *p. 312*) he again refers to the question of damages. "The damages," he says, "are not susceptible *of any exact estimation,* their only measure being an experienced judgment. It is universally admitted that, according to the theory in which our jurisprudence is founded, such questions are not adapted to the judicial methods of a court of equity. Such questions are universally, with this exception—if such exception exists—confided to the courts of common law. Such damages as these have always been assessed by a jury."

It is evident, from this review of the decision in that case, that it turned entirely upon the nature of the inquiry, viz., unliquidated damages.

The respondents further rely upon the case of *Barkalow, Receiver,* v. *Totten, 8 Dick. Ch. Rep. 573,* in which a bill was filed by a receiver against several of the stockholders to recover the whole amount of unpaid subscriptions to stock of the insolvent company; and it was held by Vice-Chancellor Emery that a suit in equity would not lie; and the ground of his decision is that the contract to be enforced was one between the subscribers and the company itself, and not a contract made between the subscribers and the receiver as such.

To the same effect is the case of *Freeman* v. *Winchester, 10 Sm. & M. 577.*

The case of *Receiver of State Bank of New Brunswick* v. *First National Bank of Plainfield, 7 Stew. Eq. 458,* also cited by defendants, is distinguishable on the same ground. There was there no contract between the petitioner and the respondent bank, and the decision went on the ground that the respondent bank had not become a party to the suit by any contract with the receiver, and that it was not a proper case for a petition as to one of the principal branches of the case. As to the other branch, it was a simple case of a debt from the respondent bank to the insolvent bank, which existed at the time of the appointment of the receiver, and contained no element of equity.

None of these cases apply to or govern the case in hand. The element of unliquidated damages is not present. The amount to be recovered is a matter of computation upon a statement of accounts.

I therefore think that the court has jurisdiction to enforce this contract in the way proposed.

But if I had any doubt upon that question, the case as actu-. ally made shows that it is one that would have been a proper basis for an English bill in equity by reason of the complicated accounts which were developed.