## Requa vs. Rea and wife.

Where the master, who was directed to sell mortgaged premises under a decree, had written instructions from the complainant's solicitor not to sell the premises for a less sum than $2600, the amount of the debt and costs, but through ignorance of his duty the premises were sold for $1000 less, to purchasers who were informed of the instructions, at the time of the sale, and before they paid their bid, the court ordered a re-sale of the property.

Where the purchasers took possession of the property and made improvements thereon, after being informed by the master that the tax would be submitted to the court, and without waiting for the confirmation of the report of sale, it was held, that they were not entitled to indemnity therefor.

Where a person becomes a purchaser under a decree of the court of chancery, he submits himself to the jurisdiction of the court in that suit as to all matters connected with such sale, or relating to him in the character of purchaser.

THIS was an application on the part of the complainant to set aside a master's sale of the mortgaged premises, on a decree of foreclosure. The premises are situate in the county of Cataraugus, and the amount due on the mortgage was about $2300, exclusive of costs. The complainant and his solicitor residing at Albany, the decree was sent to the nearest master, who resided in an adjoining county, with particular instructions to him not to let the premises be struck off to any one, other than the complainant, for a less sum than

$2600. The master supposing it necessary that some third person should make bids in the name of the complainant, endeavored to procure some one residing at Olean, where the sale took place, to bid off the property for him. For some reason not explained, no one would consent to bid as agent of the complainant. At length the master employed a transient person by the name of Davis, who agreed to bid up the property to the sum required; but having made one bid of $1500, he refused to bid any thing more, although urged by the master to comply with his agreement. The master thereupon supposing it his duty to do so, struck off the property to Martin, Bryan and Chamberlain, for the sum of $1502, and gave them a deed therefor. Shortly afterwards the master died; and the report of the sale has never been confirmed.

*J. L'Amoreux*, for the complainant.

*A. Taber*, for the purchasers.

THE CHANCELLOR. It is perfectly evident it this case that the property has been sold much below its value, in consequence of the master's violating his instructions through ignorance or a misapprehension of his duties. Although the purchasers deny that they hired Davis not to bid, it is impossible to resist the conclusion that by the device or trick of some one the property was sold much below its value. If the sale is permitted to stand, the complainant will be defrauded of more than $1000; as he was willing to give for the property the full amount of the debt and costs, and the mortgagor is insolvent. It is not necessary to express any opinion upon the question whether the purchasers were the originators of the trick, or actually used their influence with others to prevent the property from being bid up to its true value. The master had no right to permit the property to be struck off to a third person below the sum limited in his instructions. He should either have adjourned the sale and given notice thereof to the complainant's solicitor, or have put up the property in the name of the complainant at the $2600, and, if no person bid more, should have struck it off

to him at that sum. If he had adopted the latter course the complainant would have been compelled to take the property at that price. Under the circumstances disclosed, the purchasers have no equitable claim to retain the property, as they had full notice before they paid the money and took the deed. The master swears that believing Davis had been induced to betray his trust, he consented to receive their money and give the deed under an express notice to them that all the facts and circumstances would be reported by him to the chancellor for his decision thereon. If they chose to advance the money and take possession of the property after that notice of the equitable claim of the complainant to have the sale vacated, and without waiting for an order of confirmation, it was because they were willing to make an unconscientions speculation, founded upon the trick of Davis and the master's ignorance of his duty, and they must abide the consequences. Where a person becomes a purchaser under a decree, he submits himself to the jurisdiction of the court in that suit, as to all matters connected with such sale, or relating to him in the character of purchaser. ( *Cassamajor* v. *Strode*, 1 Sim. & Stu. Rep. 381.) Unless therefore these purchasers are willing to keep the property and pay the complainant the balance of his debt and costs, over the $1502, the property must be resold and put up at the sum of $2600, as on his bid. In that case the money paid by the purchasers must be refunded the sale to them must be set aside, and the deed cancelled; and they must deliver up the peacable possession of the premises to the purchaser on the resale. On the coming in and confirmation of the report of the resale, if the purchasers wish such an investigation, the court will order a reference to ascertain whether the rents and profits of the premises have been equal to the interest on the purchase money paid over to the master; and to enquire into all the facts and circumstances attending the first sale, for the purpose of ascertaining whether the purchasers have any equitable claim to an allowance out of the purchase money for these damages or costs. But they cannot be allowed for any improvements which they have made on the premises, as they went into

1831.

Osborn

v.

Heyer.

possession without authority, before the sale was confirmed ; and after notice from the master that there was at least a reasonable probability that the sale would be set aside.