———————

## SUPREME COURT.

### LENTS agt. CRAIG.

Under the terms of sale of mortgaged premises, (or other premises,) the auctioneer may put up the property for sale again, if the purchaser does not comply with the terms of sale; but this must be on such *notice* that no one will be misled by it.

Where a purchaser acted fairly, and supposed (erroneously) that he had until the next day to pay his ten per cent. on the purchase of the mortgaged premises, and he, with others, left after the premises had been struck off to him, but the auctioneer, after he had put up other premises for sale, and without any notice to the parties interested that there would be a re-sale of the first premises, again offered them for sale, and sold them at a reduced price,

*Held*, that the first purchaser should be indemnified for all losses and expenses, and the premises be resold, on the first purchaser giving security that he would bid the same amount on the new sale.

*New-York Special Term, Nov.,* 1855.

MOTION to set aside sale of mortgaged premises for irregularity, &c.

JONATHAN MILLER, *for motion.*
JOSIAH SUTHERLAND, *opposed.*

MITCHELL, Justice. At the sale of the premises in this case, they were struck of to Storkill for $6,850. The first bid had been $5,000; the next to the last was James Lynch, and was $6,825. The biddings were spirited. After the property was struck off to Storkill, the auctioneer went on to sell another lot; and then Miller, who had attended the sale to bid for the

owner of a life estate in the reversion, left the Exchange, believing that the sale would be completed; and learning (as is true) that Storkill was a man of property—said to be worth $25,000.

Storkill swears that he supposed he would have till the next day to pay his ten per cent., and that he is ready, at a new sale, to bid $6,850, as before.

Miller swears that he would have remained at the Exchange and bid on the property, if he had supposed that it would be put up for sale again on that day.

After several persons had left the Exchange, but while there was still a large company there, the premises were again put up for sale, and sold to Lynch for $6,300. This was also, as alleged by Miller and not denied, after the auctioneer had begun to sell another lot.

Under the terms of sale, the auctioneer may put up the property for sale again, if the purchaser does not comply with the terms of sale; but this must be on such notice that no one will be misled by it. Miller was justified in inferring from the conduct of the auctioneer, that the sale was made at $6,850, and that it would be completed at that price; and he left the Exchange with this belief. Some notice after this should have been given by advertisement, or by notice to the parties interested, or who appeared in the cause, before there could be a resale; or the auctioneer should have announced, as soon as the property was struck down to Storkill, or, at all events, before he began to sell another lot, that the resale would take place immediately, if the purchaser did not comply with the terms of sale. The biddings were not *kept* open after the sale of a new lot was commenced; then, all the audience might consider the biddings in this case closed. Although there was a large company remaining at the second sale, yet it is evident that it was not a company of bidders; for at the first sale the biddings were spirited: this is not said of the second. At the first, Lynch bid $6,825; at the second, he bought the property at $6,300.

The purchaser has acted fairly; he should be indemnified for any expense he has incurred, and should be paid the costs of

this motion, and his disbursements and counsel fee in examin-
ing the title; and, say $100 for an indemnity for other losses.
Let there be a resale, if the moving party give security that on
a resale the sum of $6,850 shall be bid for the property. The
costs of the sale should also be paid, unless the persons inter-
ested in the reversion waive this.