Miller *v.* Collyer.

The judgment must be affirmed with costs.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]

————————•••————————

## MILLER *vs.* COLLYER.

The remedy against a purchaser who refuses to complete a purchase under a decree or judgment of a court of equity, is by an application to the court to compel him to complete it, or to resell the property, and hold him liable for the loss and the additional expenses.

A paper signed by an individual, on becoming a purchaser of property at a sheriff's sale under a judgment, by which he agrees to comply with the conditions of sale, is not a contract, either with the sheriff or the plaintiff in the foreclosure suit, upon which an action can be maintained by the latter as the assignee of the sheriff.

Such an instrument, in the form of a memorandum at the foot of the conditions of sale, signed by the purchaser, is merely a submission by him to the jurisdiction of the court, in the foreclosure suit, as a purchaser under the judgment therein. It lacks some of the essential elements of a contract; such as parties, mutuality and consideration.

*It seems* that conditions of a sale by a sheriff on execution, imposing upon the purchaser a liability to pay the amount of any deficiency in case of a resale, will not apply to any case except that of a resale made forthwith, upon failure of the purchaser to pay the required per centage of his purchase.

APPEAL from a judgment entered upon the report of a referee. The nature of the action, together with the facts as found by the referee, are fully stated in the opinion of the court. The referee reported that there was nothing

due from the defendant to the plaintiff; and judgment was entered upon the report, in favor of the defendant, for his costs. The plaintiff appealed.

*W. Emerson,* for the appellant.

*F. Larkin,* for the respondent.

*By the Court,* EMOTT, J. The agreement upon which this action was brought, was a paper signed by the defendant in becoming a purchaser at a sale by the sheriff of Westchester county, under a judgment of this court in an action for the foreclosure of a mortgage. It was a memorandum at the foot of the conditions of the sale made by the sheriff, stating that the defendant had purchased at a certain price, and that he agreed to comply with the conditions. These conditions provided that twenty per cent of the purchase money should be paid at the time of the sale, which was on the 26th of February, 1856, when the deed was to be ready for delivery. The fifth clause in the terms of sale reads as follows: "The biddings will be kept open after the property is struck down; and in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will be again put up for sale under the same terms of sale, without notice to the purchaser; and such purchaser shall be held liable for any deficiency there may be between the sum for which the said premises shall be struck down upon the sale, and that for which they may be purchased on the resale, and also for any costs or expenses occurring on the resale." The premises were struck down to the defendant for $2811. He did not pay the twenty per cent at the time of the sale, nor afterwards. He did not appear to claim his deed on the 26th of February, and no deed was ready for him at that time. No sufficient deed was ever executed, but an unsealed paper was at length tendered to the defendant, which he refused to receive, or to complete his purchase. At

length, in June, 1857, the premises were again advertised, and on the 21st day of August, 1857, were sold by the same sheriff, then out of office, and again purchased by the defendant, for $2300. A new set of conditions of sale were made at this resale, varying from the former in this respect, that twenty per cent being paid at the time of the sale, which was August 21st, the residue was payable and the deed to be delivered September 28th, and also in other particulars which are perhaps not important. This action is brought by the plaintiff in the foreclosure suit to recover the difference between $2811 and $2300 and the expenses of the resale.

The execution of the judgment, throughout, was very loosely conducted by the sheriff. Such conduct in a master in chancery would no doubt have provoked the severe animadversion of the court; but under the present condition of things such practice seems to be, in the sheriffs' offices in some counties, the rule rather than the exception. It was the duty of this sheriff to have insisted upon the payment of the twenty per cent at the time of the first sale, to have kept the biddings open until it was paid, and to have provided distinctly for the forfeiture of that sum if the purchaser did not afterwards complete his purchase. That is the object of requiring a deposit or payment in the case of judicial as well as other sales, and this object is liable to be wholly defeated by not requiring the payment before closing the sale. It was equally the duty of the sheriff, when the defendant did not comply with his terms at the time of the sale, to proceed at once to sell again, and not to leave the matter open for more than a year and a half.

It is indeed to my mind more than doubtful whether the condition of the sale in 1855, imposing liabilities upon a purchaser in case of a resale, would apply to any case except a resale made forthwith, and of course upon failure to pay the required per centage of his purchase. The conditions provide that the biddings are to be kept open, and if the purchaser fails to comply, the premises are to be again put

Miller *v.* Collyer.

up under the same terms of sale. There is no reference to any disposition of the per centage required on the day of sale, nor do the conditions provide either for its forfeiture or return.

However this may be, this action cannot be supported. The remedy against a purchaser who refuses to complete a purchase under a decree or judgment of a court of equity, is by an application to the court to compel him to complete it, or to resell the property and hold him liable for the loss and the additional expenses. Such an application will be disposed of upon equitable principles, and no doubt facts would be considered which could not be allowed to influence the decision of a suit at law. There was at first some hesitation as to the power of the court of chancery in such cases. In *Lansdown* v. *Elderton*, (14 *Ves.* 512,) Lord Eldon doubted whether he had the power to commit a purchaser, or do more than discharge him from his purchase, but at length made the order, observing that a purchaser could not be allowed to baffle the court. In *Gray* v. *Gray*, which, although decided in 1811, will be found first reported in 1 *Beav.* 199, an order was made against a purchaser that he pay his purchase money within a time set, or in case of default that the property be resold, and the purchaser pay the deficiency, if any, from the price of his purchase, and the price at the resale, with the costs. This case is approved in *Harding* v. *Harding*, (4 *Myl. & Cr.* 514,) in which there had been an order discharging the purchaser from his purchase, but at the same time ordering a resale, and holding him for the deficiency. On appeal, Lord Lyndhurst decided that the proper course was not to rescind the sale, and leave the question to an action for damages, but to hold the purchaser to his purchase, and order a resale in the meantime, and that the purchaser pay the loss and expense, enforcing the order by process of contempt. These cases do not proceed strictly upon the ground of contract, but upon the ground that when a person be-

comes a purchaser under a decree, he submits himself to the jurisdiction of the court as to all matters connected with the sale or with him in the character of purchaser. (*Requea* v. *Rea*, 2 *Paige*, 339.) He may as well be compelled to complete as to relinquish his purchase, and the court by whose order the sale is made must decide in the original suit, whether either is equitable and right. The existence of this jurisdiction in the original action is a sufficient reason why a court of law should not entertain a new action on the alleged contract as between party and party. In *Wood* v. *Mann*, (3 *Sumn.* 318, 325,) Judge Story expressed a decided opinion that a court of law would not entertain jurisdiction of an action upon a covenant under seal by a purchaser under a decree, and a surety, made expressly to and with the party for whose benefit the lands were sold, that the purchaser would comply with the terms; which would be a different and a much stronger case for an action than this.

The present action is not a suit for damages for the breach of a contract to purchase. It is an action to recover an amount stipulated to be paid by the defendant, in the paper signed by him on the 26th of December, 1855. The plaintiff has taken an assignment of this paper, and contends that it is a contract between the defendant and himself as the real party in interest. His counsel admits that the sheriff could have maintained no action upon this paper, and substantially concedes that nothing passed by his assignment to the plaintiff. The cases cited, *Yates* v. *Joyce*, (11 *John.* 136,) and *Barker* v. *Matthews*, (1 *Denio*, 335,) certainly contain the doctrine, that a sheriff has no right or interest in real estate advertised to be sold by him, which will authorize him to maintain any action for an injury or an interference with it. These cases do not, however, maintain the plaintiff's position. They were both actions on the case for damages, and in the case in 11 *John. Rep.* a man who had a legal lien on certain lands by a judgment was allowed to maintain

Miller *v.* Collyer.

an action for a fraudulent injury to the lands by the removal of buildings and fences, with intent to defeat or prejudice such lien; while in *Barker* v. *Matthews,* such an action was not sustained for a similar injury to personal property which had been levied upon, because the property was in the custody of the officer, and he could have sued the wrongdoer.

The paper signed by the defendant is no more a contract with the plaintiff than with the sheriff. The plaintiff is not a party to it, and has neither powers nor duties under it. It is not a mutual agreement between the defendant and the plaintiff, or any other party to the foreclosure. If it is to be called a contract at all, it is a contract with the court. The sale is made by the order of the court, and is under its control, and not that of any party, to perform or to rescind. In truth, however, the word contract is somewhat inartificially used when it is applied, as it has been by judges, to such papers. The memorandum signed by the defendant was only a quasi contract; it was in reality a submission to the jurisdiction of the court in the foreclosure suit as a purchaser under the judgment. It is easy to see that it lacked essential elements of a contract, not only parties, but mutuality and consideration. It contained, or was intended to contain, an express consent to the exercise of the powers which we have seen courts of equity assert *ex proprio vigore* over purchasers; and it is doubtful if it added any thing to the jurisdiction or authority of the court, in this particular. There can certainly be no suit maintained upon it as an express stipulation with any person whatever

The foregoing considerations are conclusive against this suit. This is not, it must be observed, a special action for damages. The complaint contains no sufficient averments for that purpose, nor would the proofs sustain them. The summons is for a money demand, and the suit is wholly in contract.

It is unnecessary to proceed farther with an examination

of the controversy, although, if the court could entertain the action, I think it would not be difficult to show several sufficient reasons why the plaintiff ought not to recover.

The judgment must be affirmed with costs.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]