## Case No. 7,623.

### The KATE WILLIAMS.

[2 Flip. 50;[1] 9 Chi. Leg. News, 426; 2 Cin. Law Bul. 214.]

District Court, E. D. Michigan. June, 1877.

PRACTICE IN ADMIRALTY—JUDICIAL SALE—COMPLETION OF PURCHASE—PAYMENT—MARSHAL'S RETURN—BID BY PROCTOR—WARRANTY OF COMPLETE OUTFIT.

1. A purchaser at a judicial sale may be compelled in a court of admiralty to complete his purchase by payment of the money.

2. Should the marshal fail to make return of the writ with his action thereon, it is a mere irregularity, which is healed by confirmation of the sale.

3. Though the name of the purchaser be not inserted in the order, a service of such order upon him. when in default, to pay money into court. is sufficient.

4. If a proctor bid at a sale he may be personally held upon it, unless it be known to the marshal for whom he is bidding.

5. The words "her boats, tackle, apparel and furniture," used in the writ and published notices of sale, imply no warranty of a complete outfit, nor even that all the property, that once belonged to the vessel, is in possession of the marshal; especially when he sells her "as she lies."

At the time the tug was seized upon the attachment, most of her apparel and furniture was in the hands of one Demass, and was never taken possession of by the marshal. A decree having passed upon the original libel, a writ of venditioni exponas was issued, commanding that the tug, "her boats, tackle, apparel and furniture," be sold on the 26th day of December, 1876. The marshal offered the tug for sale at auction, and struck her off to Julian G. Dickinson for four thousand dollars. The deputy marshal [Mr. Blanchard],[2] as he offered her for sale, announced publicly that he sold her "as she was." naming the property that had been seized by him as such officer. and would undertake to deliver nothing but what was upon the vessel. His announcement was understood by Mr. Dickinson and by many others who were present at the sale. On the 17th day of January an order was made [by Judge Withy, then holding this court],[2] reciting the regularity of the proceedings, and confirming the sale. Application was repeatedly made to Mr. Dickinson to pay the money. a bill of sale was executed and tendered him. with a demand for the purchase price, which he neglected to pay. but asked further time, and promised to pay whenever an order

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]
[2] [From 9 Chi. Leg. News, 426.]

of distribution should be entered. Subsequently, he claimed that his client, Mr. Murphy, for whom he had bid off the property, refused to accept the bill of sale, unless all of the apparel and furniture originally belonging to the boat, was turned over to him. There was about $300 in value of this missing. On the 13th day of February, a further order was made that the proceeds of the sale be forthwith paid into the registry of the court. A copy of this order having been served upon Mr. Dickinson, motion was made for an attachment for contempt in refusing to comply with it.

F. W. Clark and Wm. A. Moore, for the motion.

R. A. Parker, opposed.

BROWN, District Judge. The power of the court, the practice of which is analogous to that of a court of chancery, to compel a purchaser to perform his undertaking and pay the amount of his bid, was admitted upon the argument, and seems to be well settled by the authorities. Rohrer, Jud. Sales, §§ 152–156; Wood v. Mann [Case No. 17,954]; Brasher v. Van Cortlandt, 2 Johns. Ch. 505; Requa v. Rea, 2 Paige, 339; Cazet v. Hubbell, 36 N. Y. 677. The purchaser in cases of this kind is regarded as making himself so far a party to the original proceeding as to render himself amenable to the process of the court to compel obedience to its orders.

It was claimed in this case, however, that the sale was irregular, for the reason that the marshal had made no return of his writ into court, and no report of sale had been filed. Without undertaking to say whether the mere omission to file the writ and the report of sale would constitute such an irregularity as would vitiate this proceeding, it is sufficient to say that such irregularity, if it existed, was healed by the order of confirmation. 2 Daniell, Ch. Prac. 1279; Todd v. Dowd's Heirs, 1 Metc. (Ky.) 281.

It is further claimed, that, as the order was general, and not directed to any particular person, it must be presumed to have been made under rule 41, and intended to operate only upon the marshal; but I apprehend such an order would operate upon any person upon whom it was served, and who was actually in default for failing to pay over the purchase price.

Further objection is made, that this court has no power to attach the bidder, inasmuch as he was acting as the agent of another party in making the purchase. Although he was a proctor of this court, it does not appear to have been known to the marshal at the time of the sale, at least by any information received by him, that he was not acting in his own behalf. After the sale was completed, he was asked to whom the bill of sale should be executed, and replied that he would let the marshal know in a short time. There are three cases where an agent may be held personally responsible upon his contracts: (1) Where it is not known to the other party that he is acting as agent at all. (2) Where the fact of his agency is known, but the name of his principal is not disclosed. (3) Where he exceeds his authority as agent. Story, Ag. §§ 264–268. While, in this case, the deputy marshal may have suspected, or even have been satisfied in his own mind, that the buyer was acting only as agent, this knowledge could only have been derived from the fact that he was known as an attorney at law. There was nothing else to put him upon inquiry. Whether this was sufficient to apprise him of his character is immaterial, for it is not disputed that he did not learn the name of his principal until some considerable time after the sale. In his affidavit, Mr. Murphy swears that he authorized Mr. Dickinson to bid for him, upon the belief and understanding that the tug, with all her boats, tackle, apparel, furniture, and appurtenances were included in the sale. If this be so, Mr. Dickinson should not have made the bid, as he was fully apprised at the time that he was buying only such property as was upon her. The marshal is certainly not chargeable with this fault. I deem this of little consequence, however, as Mr. Murphy was present at the sale, heard the announcement of the marshal that he sold her as she was, and interposing no objection to the bidding of his attorney, thereby ratified his action. It is further claimed that the purchasers were misled by the published notices of sale which designated the tug her "boats, tackle, apparel, and furniture," as the property to be sold. These words, however, imply no warranty of a complete outfit, nor even that all the property that once belonged to her is still on board or in possession of the marshal. Where the announcement is made that the tug is sold "as she is," it is incumbent upon the buyer to ascertain her actual condition before bidding, and any loss occasioned by his failure to do so is imputable to him. As no claim of misapprehension of the terms of sale was made in this case until nearly two months after the sale had taken place, and after repeated demands and promises to pay, there is reason at least for saying that no such apprehension existed. While it is quite possible that Murphy might be held responsible as the principal in this purchase, it does not follow that the agent may not also be made liable. This is one of that not infrequent class of cases where the other party may look either to the principal or the agent.

The case is very similar to that of Brasher v. Van Cortlandt, 2 Johns. Ch. 505, where an attachment was moved for against one Clay, for refusing to complete a purchase made on a master's sale. Respondent showed cause, by stating that he was requested by one Van Cortlandt, to become a purchaser in his behalf; that it was then represented to him that it was intended to appeal from the decree, and the request for him to purchase

was to prevent the possibility of loss, in case the decree should be affirmed, and that he became a purchaser from motives of friendship for Van Cortlandt. Chancellor Kent decided that he must complete his purchase.

It is not necessary here to determine whether the purchaser be entitled to such of the furniture and apparel of the tug as was in the possession of Demass at the time of the sale. Under general admiralty rule 8, the marshal could probably have compelled the delivery to him of this property, but not having done so, it is very doubtful whether it is not now too late; still, it is no reason for the bidder refusing to complete his purchase. The announcement was distinctly made and understood, that the sale embraced only the tug and such of her equipment as was actually upon her, and he cannot now question the proceedings by reason of failure to deliver other property. While it is true, as Murphy swears, that he may have expected the marshal to deliver all the tug's appurtenances, which it seems he had seen in Livingston's warehouse not long before, he had no good reason to expect it, and took his chances of disappointment.

The practice of withdrawing from purchases thus made has become so common as to operate as a serious inconvenience. In several cases re-sales have been ordered at a greatly increased charge for advertising and ship-keeping. The attendance, too, is usually much less numerous at a re-sale, the bidding less spirited, and the property is often sacrificed for much less than it brought at first. As observed by the chancellor in Lansdown v. Elderton, 14 Ves. 512: "A purchaser ought not to be permitted to baffle the court in this way." I think the proper practice is, for the marshal, before adjourning the sale, to require an instant deposit of at least one-tenth of the amount of the bid, giving the purchaser twenty-four hours thereafter to raise the residue. The purchaser would ordinarily prefer to make good his bid rather than incur a forfeiture of his deposit. While in this case the purchaser has been guilty of no fraud or moral wrong, and probably acted through mere inadvertence, still, as the sale was fairly made, I think it a case where the court is properly called upon to enforce it.

An order will be entered that the purchaser pay the amount of his bid in six days, or that an attachment issue.