.CHARLES GROSS, Respondent, *against* JOHN JANCSOK, Appellant.

(Decided July 18th, 1890.)

At a sale by auction of personal property under a power in a mortgage thereof, defendant became the purchaser on a bid of $325, after other bids, up to $320, had been made. It did not appear that such bids were not made in good faith. The real value of the property was about $400. *Held*, that defendant could not object to the fairness of the sale, because of a secret agreement between him and the mortgagee that he should pay $325 for the property, and that no one else should get it.

Defendant refused to complete the purchase, and told the mortgagee to sell the property to some one else, and was thereupon told that he would be held liable for any loss on such resale. The property was then readvertised once, and sold without further notice to defendant. *Held*, that the finding of a jury that defendant had reasonable and proper notice of the resale would not be disturbed on appeal, no fraud or bias being shown.

APPEAL from a judgment of the District Court in the City of New York for the Eighth Judicial District.

The facts are stated in the opinion.

*George W. McAdam*, for appellant.

*John Mulholland*, for respondent.

BOOKSTAVER, J.—This action was brought by the plaintiff, a vendor, against the defendant, a vendee, to recover damages on a resale of certain fixtures, etc., of a dining-room or restaurant, No. 197 Third Avenue. The property was sold at public auction under a power contained in a chattel mortgage, and at the sale the defendant, on the 5th February, 1890, purchased the whole of it for the sum of $325 after other bids up to $320 had been made. He paid $5 on account of the purchase, and agreed to pay the remainder on the same day at 4 P. M. When that hour arrived, defendant refused to complete the purchase and told plaintiff's repre-. sentatives " to sell it to some one else," because his wife did

Gross *v.* Jancsok.

not want him to take it. He was then told that if the property was resold it would be on his account, and he would be held liable for any loss on such resale.

The property was then readvertised once without further notice to the defendant, and realized the sum of $256.42 only. Against this the plaintiff charged $20 for a watchman for five days and nights and $2.40 for advertising and auctioneer's fees, and credited the defendant with the net proceeds, to wit, $208.58, and brought suit for the difference between the purchase price and the net amount realized, that is to say for $116.12. The trial court only allowed $4 for watchman's fees, and the jury, after a charge by the court, rendered a verdict in plaintiff's favor for $74.98. The defendant does not dispute plaintiff's right to resell under the circumstances; but claims the first sale was not fairly conducted, the second was not made in good faith and with reasonable diligence, was not properly advertised, and defendant had no proper notice of the time and place of the resale.

As to the first objection, it appears from the evidence of the attorney for the mortgagee that the property was advertised by him to be sold at auction, and there was a secret agreement between him and the defendant, that the latter should pay $325 for the property, and that no one else should get it, no matter what they bid for it. So far as appears from the evidence, on the sale the sum of $320 was bid for the property in good faith, and defendant's bid was the highest offered; his private understanding with the attorney, therefore, could not affect the general public; and the fact is no bidder complained of the price at which it was sold to the defendant. Nor does it appear that the previous bid of $320 was made by anyone employed by the plaintiff or his attorney to inflate the price and to induce the defendant to bid a higher price than he otherwise would have done, and in this respect it differs widely from *Fisher* v. *Hersey* (17 Hun 370).

On the contrary, the evidence shows that the property was fairly worth $400, and this defendant's counsel claims was about its real value. The rascality of the understanding, which defendant claims was made with the mortgagee's

attorney, by which he was to get the property at public sale for $225, was equally shared by defendant himself—he should not be allowed to avail himself of his own wrong in the absence of any deceit practised on him.

As to the second objection, that the resale was not made in good faith and with reasonable diligence, we have carefully examined the testimony and the judge's charge on that point, and find the charge was fair and impartial on that question, and the jury's finding was fully sustained by the evidence. We may say that the charge was as strongly in defendant's favor as the circumstances warranted, and the finding of the jury in such a case will not be disturbed (*Conkling* v. *Thompson*, 29 Barb. 218; *Coring* v. *Calvert*, 2 Hilt. 56; *Maguire* v. *Woodside*, Id. 59; *Barber* v. *Arnoux*, 18 How. Pr. 285).

As to the third and fourth objections, that the property was not properly advertised, and the defendant had no notice of the resale, we think there is no law prescribing what notice shall be given to a defaulting purchaser, and it was fairly submitted to the jury whether the notice in fact given was a reasonable or proper notice, and their conclusion upon that question, as before shown, is binding on us in the absence of fraud, misrepresentation, bias, or prejudice, none of which do we perceive in this case.

In the case of *Pollen* v. *LeRoy* (30 N. Y. 549), it was said: "A vendor, if he elects to become such, is an agent for the vendee who refuses to complete his purchase, to sell fairly and for the best advantage. The only requisite to such sale as a measure of the rights and injury of the party is good faith; there is nothing in the cases which I have found requiring more than this." In the same case it was held that, although the law regards the vendor as agent *quoad hoc* of the vendee, it is no part of his duty to notify the principal of the time and place of sale.

In *Hunter* v. *Wetsell* (84 N. Y. 549), it was held that the vendor might have abandoned the property and sued for the full price of the goods sold, and that he might, although he was not bound to, resell at auction.

Lathers *v.* Hunt.

In *Messmore* v. *New York Shot & Lead Co.* (40 N. Y. 429), it was held that the vendor had a right to sell at the best price he could obtain, after his offer to deliver the goods, and the law did not require him to give any notice of the time or place of sale.

In *Porter* v. *Wormser* (94 N. Y. 447), it was held that an agent authorized to sell property might, in the absence of restrictions, sell in any ordinary manner.

In *Bigelow* v. *Legg* (102 N. Y. 652), it was held that the measure of damages, in such case, is the difference between the contract price and the market value, and the price realized at auction may properly be taken into consideration in determining the market value. The fact that the property on the second sale was not sold in bulk but in detail, was in defendant's favor. The fact that the license, etc., was not tendered to the defendant, is not material in view of his positive refusal to take the property at any price.

We therefore think, in any aspect in which this case may be viewed, the judgment of the court below must be affirmed, with costs to respondent.

ALLEN, J., concurred.

Judgment affirmed, with costs.