### EGAN v. BUELLESBACH et al.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

MORTGAGES—FORECLOSURE—SALE—DEFAULT OF PURCHASER.

    Where the terms of a foreclosure sale provided that the bids were to be kept open after the property was struck down, and in case the purchaser should fail to comply with any of the conditions the premises would again be put up for sale without application to the court, unless the plaintiff's attorney should elect to make such application, and that the purchaser would be held liable for any deficiency on a resale, where the purchaser failed to comply with his bid, and the property was resold on order of court without formal notice to him, though he had actual notice of the application for the order, and he applied to the court to be relieved of his purchase, and, his motion having been denied, he took no appeal from the order, the order is conclusive on the question of his liability for the deficiency in the amount realized on the resale.

    Houghton, J., dissenting.

Appeal from Special Term.

Action by Peter R. Egan against Maria A. Buellesbach and others. From an order directing Newman Grossman, purchaser at foreclosure sale, to pay the amount of the deficiency between the amount bid by him at the sale and the amount realized on a resale of the property, he appeals. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, HOUGHTON, CLARKE, and SCOTT, JJ.

Julius Levy, for appellant.

James A. Foley, for respondent.

INGRAHAM, J. In pursuance of a judgment of foreclosure and sale, the mortgaged premises were sold at public auction on May 22, 1906, by a referee appointed in said judgment. At that sale the appellant bid for the property $13,100 and the property was sold to him for that amount. He executed a memorandum of sale as follows:

"Newman Grossman have this 22d day of May, 1906, purchased the premises described in the annexed printed advertisement of sale, for the sum of thirteen thousand one hundred ($13,100) dollars and hereby promise and agree to comply with the terms and conditions of the sale of said premises, as above mentioned and set forth.

"N. Grossman.

"Dated May 22, 1906."

The terms of sale referred to in the memorandum signed by the purchaser, and which the purchaser promised and agreed to comply with, provided that 10 per cent. of the purchase money would be paid to the referee at the time and place of sale, and the residue of said money should be paid to the referee at his office, in the city of New York, on or before the 22d day of June, 1906, at 12 o'clock m., when the referee's deeds would be ready for delivery; that the referee was not required to send any notice to the purchaser, and, if he neglected to call at the time and place specified to receive his deed, he would be charged with interest thereafter on the whole amount of his purchase; "that the biddings will be kept open after the property is struck down, and, in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will be again put up for sale under the direction of said referee under these same terms of sale, without application to the court, unless the plaintiff's attorney shall elect to make such application, and such purchaser will be held liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale, and that for which they may be purchased on the resale, and also for any costs or expenses occurring on such resale."

The purchaser subsequently informed the referee that the premises had been purchased by him under a misunderstanding, and refused to accept a deed of the said premises. Subsequent to such refusal an ex parte order was obtained directing the referee to resell the said premises, and the premises were subsequently duly readvertised for sale and the property sold for $12,550, leaving a deficiency of $550. No formal notice of the application for an order directing a resale was given to

the purchaser. The purchaser gave to the referee a check for the 10 per cent. required to be paid; but, when that check was deposited for collection, it was returned, with a notice upon it that payment had been stopped. The purchaser and his attorney called on the referee on the 23d day of May, the day after the sale, and stated that they would refuse to accept the deeds of the property and comply with the terms of sale, and requesting that they be released from the sale, which the referee refused. Subsequently, on the 28th day of May, the purchaser had a conversation with the referee, when the question was discussed as to whether the referee should take initiative in applying to the court to determine whether the purchaser should be held to his bid, or whether a motion to be relieved from the sale should be made by the purchaser. The referee stated to the purchaser and his attorney that he would await the resale, which they had consented should take place before making any move in the matter; and on May 31, 1906, in pursuance to the consent of the purchaser, an order was entered ex parte allowing a resale of the premises. That on June 26th, after advertisements duly published, the resale was held, and upon that day both the purchaser and his attorney were present in the real estate sales rooms where the sale was conducted, but no bid was made by them for the property. Subsequently to the order for a resale, the purchaser made a motion to be relieved from the purchase noticed on the 12th of June, 1906, and the purchaser stated in his application that a resale was to take place on the 26th day of June, 1906. Subsequent to the resale the purchaser tendered to the referee $100 in settlement of the claim of the referee on account of the bid, and subsequently raised that offer to $250. This the referee refused to accept, and stated that an application had to be made to the court. None of these facts were denied by the purchaser.

It appears, therefore, that, after the purchaser refused to complete his purchase, he stopped payment of the check which he had given as 10 per cent. of the purchase, and immediately after the sale refused to comply with his bid and complete his purchase; that he was notified that an application was to be made ex parte for a resale, had notice of the resale, and was present at the time of the resale; and that the only objection that he raises upon this appeal is that he was not formally served with a written notice of the application of the order for a resale. The terms of sale with which he promised and agreed to comply provided that the bids should be kept open after the property was struck down, and, in case any purchaser should fail to comply with any of the conditions of sale, the premises so struck down to him would again be put up for sale under the direction of the referee under the same terms of sale, without application to the court, unless the plaintiff's attorney should elect to make such application; and such purchaser would be held liable for any deficiency that there might be between the sum for which the premises should be struck down upon the sale and that for which they might be purchased on the resale. These terms of sale have been in use for many years and are perfectly familiar to all purchasers at judicial sales. There could be no question but that, if the referee had immediately, upon the purchaser's stopping payment of the check

and refusing to comply with the terms of sale, put the property up for resale, without application to the court, the purchaser would have been liable for any deficiency. The plaintiff's attorney, after the purchaser had refused to complete the title, and after the purchaser had been notified that such an application would be made, obtained an ex parte order directing a resale. There was then a readvertisement of the property, of which the purchaser had full notice. He attended the sale, and was in a position to protect himself. No possible advantage could accrue to him by having a formal notice of the application of the order for a resale. He had notice that such an order would be applied for, and did not request that a formal notice be given to him. There was no claim of any surprise, and he now makes no claim that he was in any way injured by reason of the failure to give him formal notice of the resale. After the order for the resale he applied to the court to be relieved of his purchase. That motion having been denied, he took no appeal from the order. The purchaser in effect made an application to relieve him from liability for a failure to comply with his purchase, and that necessarily involved a determination of the question as to whether the resale under an order, without formal notice to him, relieved him from his liability to pay the deficiency. A denial of that motion was necessarily an adjudication that he was liable for the deficiency, and from that order he took no appeal. The question, I think, is res judicata, and prevents the purchaser from relying upon this objection on a motion to compel him to pay the deficiency.

In Burton v. Linn, 21 App. Div. 609, 47 N. Y. Supp. 835, in discussing the effect of a motion to compel a purchaser to complete a sale under a judgment of foreclosure, it was held that the determination of such a motion was an adjudication binding upon the purchaser, which he was bound to obey, precisely as the purchaser in an ordinary contract would be bound to obey a judgment for its specific performance, and the effect of an order denying the application by a purchaser to be relieved from his purchase determines the question as to the liability of the purchaser under his contract made at the time of the sale to complete the purchase. In Rowley v. Feldman, 74 App. Div. 492, 77 N. Y. Supp. 453, it was held that an order directing a resale made on motion to the purchaser was res judicata as to his liability; that the amount of the liability only remained to be determined; and that the appellant was bound by the resale, although he received no actual notice of its time and place. The mere fact that formal notice of the application for a resale was not given to the purchaser was not at all material. While the order for a resale being made without notice would not be an adjudication binding upon the purchaser, there is nothing to justify the conclusion that it relieved him from his liability to complete the purchase. The case of Anthon v. Batchelor, 22 Abb. N. C. 423, 5 N. Y. Supp. 798, was a decision at chambers, and it did not appear that the purchaser had actual notice that an order was to be applied for directing a resale, or had notice of the time and place of the resale. So far as it holds that a sale under an order without notice to the purchaser was a waiver of the right to enforce the first sale, it should not be followed. Notice to the purchaser of an application for a resale

is only necessary to prevent him from being taken by surprise, or to prevent a resale taking place without notice to him and without enabling him to protect his interest. In this case he had such notice, and I think it clear that he is liable for the deficiency.

It follows that the order appealed from should be affirmed, with $10 costs and disbursements.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I dissent. In this case the order for resale, which did not adjudicate in any manner that the purchaser would be liable for any deficiency which might arise, was obtained ex parte before the purchaser, this appellant, presented his petition to the court to be relieved from his bid. The prevailing opinion concedes the proposition, and it must be conceded, that an order directing a resale, where the terms of a judicial sale are not complied with, is res adjudicata as to the rights of the purchaser and of the parties to the action in which the sale is made. This being the effect of such an order, I do not think any subsequent order which might have been made upon the appellant's petition for relief would have any effect upon the prior order of resale. Whether it would or not it would seem to be a sufficient answer to the proposition that the petitioner is barred of his rights by its provisions to say that the record does not contain any such order. The record does contain the petition of Newman Grossman praying that he be relieved from his bid because of the misapprehension under which he labored when he made it, and asking that the check which he had given for a part of the purchase money be returned to him, and a memorandum of Mr. Justice Truax giving certain reasons for denying such petition; but no order appears in the record, and no reference to it, except it is stated in the moving affidavits than an order was entered and no appeal taken. Of course, the memorandum or opinion is not an order and cannot be treated as such.

In the first place, it seems to me that, if we are to hold that a judgment is binding upon a party, we ought to have the opportunity of inspecting the judgment itself; and, in the next place, that, whatever the form of the order of denial may have been, it could not fasten liability upon the purchaser because he had been relieved from liability by the order of resale made prior thereto. The order for resale being in effect a binding adjudication and containing no provision fastening liability for deficiency upon the purchaser, he could not be made liable by any subsequent order while the former order was still in force. The parties to the action saw fit, instead of reselling without an order of the court, to obtain and enter, without notice to the purchaser, an order having all the effect of a judgment, which did not adjudicate that he should be liable for any deficiency which might arise upon a resale.

Parties conducting a judicial sale have four courses open to them when the purchaser refuses to complete his bid: (1) They can move to compel him to complete, and, if just that he should, the court can enforce his compliance by contempt proceedings; (2) they can resell without order, at once, according to the terms of sale, and he will be held for the deficiency; (3) they can, on notice to him, obtain an order

of the court for resale on his account, adjudging that he shall be liable for any deficiency and republish, in which case the purchaser will be entitled to any surplus which may arise as well as liable for any deficiency that may occur; (4) they can obtain an order ex parte, or on notice, without any adjudication that the purchaser shall be liable for any deficiency, and republish, in which case the parties to the action, and not the purchaser, will be entitled to any surplus arising. It was the latter course which was pursued in this case. From what the parties to the action did, it must be assumed that they did not care to give the purchaser the benefit of any surplus which might arise; but chose rather to waive their deficiency claim against him and retain the right to the surplus to themselves. If this assumption is not true, then we simply have the fact that the parties were mistaken as to the law, and obtained a judgment in the form of an order which adjudicated no liability against the delinquent purchaser. In either case the purchaser was relieved.

In considering the question, the character of liability of a purchaser at a judicial sale should be borne in mind. By bidding he subjects himself to the jurisdiction of the court, although not a party to the action in which the sale is made. Andrews v. O'Mahoney, 112 N. Y. 567, 20 N. E. 374; Requa v. Rea, 2 Paige, 339; Hegeman v. Johnson, 35 Barb. 200; Bicknell v. Byrnes, 23 How. Prac. 486. He may be held liable upon his bid, although no memorandum of sale is signed, for a judicial sale of real property is not within the statute of frauds. Andrews v. O'Mahoney, supra. The signing by him of a memorandum of sale is merely a submission of himself to the jurisdiction of the court as a purchaser, and he thereby enters into no contract and cannot be sued thereon nor bring action against the officer conducting the sale or any of the parties to the decree. Miller v. Collyer, 36 Barb. 250. He may be compelled to complete his purchase by motion, whether he signs a memorandum of sale or not. Miller v. Collyer, supra; Requa v. Rea, supra. If he refuses to complete his purchase, and an order for resale is made upon notice to him, the resale may be had on his account and an adjudication made that he will be liable for any deficiency which may arise; and, if the property brings more on the resale than he bid, he is entitled to the surplus as well as liable for the deficiency. 2 Jones on Mortgages, § 1642.

An order for resale directed to be made on account of the purchaser, on notice to him, adjudging that he pay any deficiency that may arise on such resale, is res adjudicata of his rights and liability. Rowley v. Feldman, 74 App. Div. 493, 77 N. Y. Supp. 453. If the order for resale, even if he be given notice thereof, is a bare order of resale, and does not specify that it is on his account, or that he shall be liable for deficiency, whether he signs the terms of sale or not, he cannot be held liable for the deficiency if the property sells for less than he bid. Phelan v. Downs, 59 App. Div. 282, 69 N. Y. Supp. 375, affirmed 173 N. Y. 619, 66 N. E. 1115; Goodwin v. Simonson, 74 N. Y. 133.

I have taken occasion to examine the record in Phelan v. Downs, supra, and find that the terms of sale signed by the purchaser in that case are identical in all material points with the terms of sale in the present case. It is true that in that case an unauthorized agent had bid

in the property and used the money of his principal to make the required deposit, and that the action was brought by the principal to recover such moneys. The case was decided, however, on the ground that the principal could recover them back because the agent himself could recover them. The agent had signed the terms of sale, which provided that in case he did not comply with them a resale might be had without notice and without order, or upon a new order, at the option of the plaintiff. After making his deposit he failed to pay the balance of his bid. An order was made requiring him to complete, with which he failed to comply. Instead of taking contempt proceedings against him, the premises were resold upon a new order which neither forfeited the deposit nor adjudged him responsible for the deficiency, and it was held that such order was a protection from liability for deficiency and from any forfeiture of the deposit which had been made.

In Goodwin v. Simonson, supra, the purchaser signed the terms of sale and failed to complete his purchase. An order was granted requiring him to complete. He failed to comply with this order, and subsequently another order was made directing a resale, which was had; a large deficiency arising. The mortgagor moved to vacate the judgment of deficiency entered against her, which would not have arisen if the purchaser had been held to his first bid. The motion was denied and an appeal taken. In considering the questions involved, Miller, J., said:

"Aside from the considerations suggested, there is another reason for sustaining the order. A purchaser at a foreclosure sale may be compelled to complete his purchase, or may be discharged and a resale ordered. Requa v. Rea, 2 Paige, 339; Miller v. Collyer, 36 Barb. 250. The plaintiff had an election either to proceed against the purchaser for a contempt, or to apply for a resale; and the omission to take the former course did not discharge the surety. As the court granted a resale, the purchaser was discharged from liability to make good the deficiency arising in the last sale, by the order of the court. This order is conclusive, and relieved the plaintiff from any obligation to institute proceedings to recover the deficiency of the purchaser."

The principles enunciated in these two latter cases, it seems to me, are decisive of the question presented on this appeal. The order for a resale did not save any rights against the appellant as purchaser, or direct that the resale be had on his account, or provide that he should be liable for any deficiency which might arise on the resale. The order thus made being decisive of his rights as well as his liabilty, and it not having made him liable for any deficiency, he could not thereafter be made liable on his own motion to be relieved from his purchase, even if it be assumed that an order denying his petition was actually entered. His motion to be relieved might very properly have been denied upon the ground that he was already relieved by the order for resale which the parties to the action had elected to take.

I think the order should be reversed, and the motion denied.