(95 Misc. Rep. 709)

## In re PHILIP.

### PALMATIER v. CATSKILL MOUNTAIN RY. CO. et al.

(Supreme Court, Special Term, Greene County.　June 20, 1916.)

1. RAILROADS ⬥192—MORTGAGES—FORECLOSURE—SALE—MOTION TO EXTEND TIME FOR PAYMENT.

Where a railroad was sold under foreclosure proceedings, additional time to search title and ascertain liens, to catalogue the property, or, for an opportunity to form a corporation to take over the operation of the road and its franchises, were not grounds for an extension of time to complete the purchase; Railroad Law (Consol. Laws, c. 49) § 151, providing that an individual purchaser at the sale of a railroad may operate for six months until a corporation has been formed for such purpose.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ⬥192.]

2. RAILROADS ⬥192—MORTGAGES—FORECLOSURE—SALE—NOTICE.

Under Code Civ. Proc. § 1678, providing that a sale made in pursuance of any provision of this title must be at public auction to the highest bidder, with notice given by the officer making it, where a railroad was sold in-foreclosure proceedings under an order of the court providing that, if any purchaser shall fail to comply with the terms of sale, the property will be again put up for sale under the same terms without application to the court, and such purchaser shall be held liable for any deficiency caused by the resale, where the purchaser failed to pay the balance of the purchase price in accordance with the terms of the sale, a subsequent private sale by the referee without publication was invalid.

[Ed. Note.—For other cases, see Railroads,′ Cent. Dig §§ 391, 634–642; Dec. Dig. ⬥192.]

3. JUDICIAL SALES ⬥26—BIDS—RESALE—"IMMEDIATELY."

The rule that, on the failure of a bidder at judicial sale to perform, the referee may "immediately" resell, means that the property may be advertised for resale without mediation of a court order.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 50, 51, 53; Dec Dig. ⬥26.

For other definitions, see Words and Phrases, First and Second Series, Immediately.]

4. RAILROADS ⬥192—MORTGAGES—FORECLOSURE—SALE—PERSONS WHO MAY QUESTION—VALIDITY.

Where the purchaser of a railroad at a public sale and foreclosure proceedings made a default in payment of the purchase price under the terms of the sale, he did not waive his right to complain of a subsequent private sale without publication of notice, though excused by order of court from payment of a deficiency, as he did nothing to waive his right to bid thereat.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ⬥192.]

Petition by James P. Philip for an extension of time to complete purchase of premises sold at public sale by Orliff T. Heath, referee under a judgment of foreclosure in an action entitled William Palmatier, as Substituted Trustee for the Benefit of the First Income Bonds, against the Catskill Mountain Railway Company and others. Order vacating the stay, so far as it excused the petitioner from pay-

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment· of a deficiency, vacated, sale set aside, deed canceled, and resale ordered.

Marcus T. Hun, of Albany, for the motion.

Osborn, Bloodgood & Wilbur, of Catskill (Frank H. Osborn, of Catskill, of counsel), opposed.

HASBROUCK, J.  On the property of the Catskill Mountain Railway Company there were mortgages securing an issue of first mortgage bonds amounting to $39,000, an issue of second mortgage first income bonds amounting to $238,000, and an issue of second income bonds amounting to $15,000.  The above-entitled action was instituted to foreclose the mortgages securing the second mortgage income bonds, and beside to apply the proceeds of the sale to the payment of outstanding receivers' certificates and the first mortgage bonds.  The property covered by the mortgages consists of a railroad and its appurtenances operated in Greene county between the villages of Catskill and Palenville, approximately from May 1st until November each year, to accommodate the traffic between the mountain and country resorts and the village of Catskill.  Preparation for the entertainment of summer guests and their arrival commences about the 1st of May. The suit had proceeded to a judgment of foreclosure and sale.  The sale was advertised for April 17, 1916, at the court house, Catskill. On that day several persons interested in the bonds appeared as bidders.  The terms of sale were in the usual form, 10 per cent. down, and required the payment of the balance at the office of the referee, Catskill, April 25th.  There was bid by the interests in control of the road $27,100, and by James P. Philip $28,000, and the property was struck down to him.  He paid the 10 per cent. and signed the terms of sale, which provided further, among other things:

(7) "The bidding will be kept open after the premises and property have been struck off to a bidder, and in case any purchaser shall fail to comply with these terms of sale, or any part thereof, the premises and property so struck off to him will be again put up for sale, under the direction of said referee, under the same terms of sale, without application to the court, unless the plaintiff's attorneys shall elect to make such application, and such purchaser will be held liable for any deficiency there may be between the sum for which said premises and property shall be struck off upon the present sale and that for which they may be purchased on a resale, and also any costs or expenses occurring on such resale."

Philip applied to the referee for an extension of time to complete the purchase, stating that there was not sufficient time for him to ascertain the validity of the title and freedom from liens of the defendant company, nor time to organize a new corporation to take over the operation of the franchise and property.  The referee, after communicating with the plaintiff's attorneys, refused to grant the request. On April 24th Philip procured an order to show cause, with a stay of the sale, returnable May 6th at Kingston, why he should not be granted additional time.  About midday April 25th the stay was vacated.  Philip failed to pay the balance of the purchase price in accordance with the terms of sale on the 25th, and the referee, after ascertaining that Philip did not intend to complete his purchase, put

the property up for sale at the office of the referee, and resold it for $28,000 to E. E. Olcott and others, being the same persons who had bid $27,100 at the sale on the 17th. On May 3d Philip made a second motion, returnable May 6th at Kingston, for an extension of time, the cancellation of the deed to Olcott, the reinstatement of the sale to Philip, or for a properly advertised new sale. The action should have been timed to have secured a sale at an earlier date in the year, having reference to the season of beginning the operation of the railroad. But it was not, and the court was compelled to deal with the situation as it existed, and therefore did not undertake to postpone the day of compliance with the terms of sale. Under the facts three questions are presented for determination:

[1] 1. Should Philip's time to complete his purchase be extended? He requested additional time for the reasons that he did not know about the title to nor the liens against the property, and desired to search the title and ascertain the liens. The property had been incumbered by the mortgages since 1885, and in the same ownership for 30 years. The record of liens and incumbrances was in the courthouse near to Philip's office, and a search could have been made for them in half a day. It is not at all apparent to the court that additional time was needed for any such purpose. Nor was additional time needed to catalogue the property. That should have been attended to before the bidding. It would hardly be claimed to be reasonable conduct to bid upon the property, the extent or character of which was unknown to the bidder. Philip further claimed the completion of the sale should be postponed until he had an opportunity to form a new corporation to take over the operation of the road and franchises. This was entirely unnecessary, for the statute provides that an individual purchaser at the sale of a railroad may operate for six months until a corporation has been formed for such purpose. Railroad Law, § 151; Village of Phœnix v. Gannon, 195 N. Y. 474, 88 N. E. 1066.

[2] Though the court was not impressed with these reasons for the extension of time, yet it would have granted it, if it were not that other than private interests were involved. Consideration of the traveling public, their means of ingress and egress to and from the villages and places where summer entertainment is furnished, and the shipping of supplies thereto, led the court to the conclusion that the operation of the railroad should be commenced as soon as possible after the date of the sale.

2. The second question is: Had the referee any right to put the property up for sale at his office on the failure of Philip to complete his purchase on the 25th of April? The sale, being authorized by the judgment of foreclosure, is regulated by Code, § 1678:

"A sale made in pursuance of any provision of this title must be at public auction to the highest bidder. Notice of such sale must be given by the officer making it, as prescribed in section 1434 of this act."

The terms of the statute were complied with by the referee by advertising a public auction, and offering and selling the property at the same. The applicant, Philip, by bidding and having his bid accepted,

and submitting to the terms of sale and paying the 10 per cent., became the purchaser. /He says that when he failed to comply with its terms the referee had the power to put up the premises and property for sale, or, if the plaintiff's attorney was desirous of holding him for a deficiency, he might apply to the court upon notice to him for an order decreeing a resale. Anthon v. Bachelor, 5 N. Y. Supp. 798; Chase v. Chase, 15 Abb. N. C. 95. What he did, and what the respondents claim he had the right to do, was, when the purchaser failed to pay the balance of the purchase price at the office, to put the property and premises up for sale at his office and resell it immediately. They claim the conduct of the referee to be justified by what the Appellate Division, First Department, said in Egan v. Buellesbach, 116 App. Div. 309, 101 N. Y. Supp. 476, speaking of terms of sale identical with those above quoted:

"These terms of sale have been in use for many years, and are perfectly familiar to all purchasers at judicial sales. There could be no question but that, if the referee had, immediately upon the purchaser's stopping payment of the check and refusing to comply with the terms of sale, put the property up for resale, without application to the court, the purchaser would have been liable for any deficiency."

[3] I do not understand the language to mean that the property could be immediately offered for sale without advertising in the newspaper and posting the notice. What it does mean is that the property and franchises could be immediately readvertised and noticed, and thus put up for resale. This word "immediately," as used by the court in the language heretofore quoted from the Egan Case, has reference to putting up for sale without mediation of a court order. Thus interpreted, it is in harmony with reason and with the cases. When the property is struck off, and the terms of sale signed and complied with, as far as required on the sales day, and the bidders have departed, and the day faded into the past, the referee cannot sell again without compliance with the statute. In Jones v. Null, 9 Neb. 256, 2 N. W. 350, the sheriff had sold some real estate to one Colby for $1,925. He failed to complete his purchase, and the sheriff, an hour after the sale, going back to the place thereof, resold. The court held:

"He cannot wait until the sale is closed and the bidders have departed before again offering the property for sale."

In the case of Barnard v. Duncan, 38 Mo. 170, 90 Am. Dec. 416, the court, discussing a similar situation, where bidders had departed, says:

"Upon the refusal to accept it [the deed] the trustee proceeded at once to put up the property for sale again, at the same place, on the same day, without readvertising or any new notice, and, few persons being present, the property was resold for $25. This proceeding can neither be justified nor sustained. It was, in practical effect, a sale without notice. The sale, as advertised, had taken place several hours before, and all bidders had departed. Though yet within the hours mentioned in the advertisement, it cannot be considered a fair and valid sale pursuant to notice."

It is not pretended that the sales in the two above-described cases were under terms of sale like those in the case at bar. The point is that, for a sale held at the office of the referee eight days after the first

sale, there was no notice, no publication. That there were at the referee's office bidders was an accident. In a sale so had the very purposes of the statute were ignored. The referee is authorized to sell by the decree as directed by the statute. If the sale for any reason fails, he has the power to carry out the terms of the judgment and resell; but it must be a public sale upon notice. Bicknell v. Byrnes, 23 How. Prac. 486; Gross v. Jancsok, 16 Daly, 346, 10 N. Y. Supp. 541; Hewlett v. Davis, 3 Edw. Ch. 357; Home Ins. Co. v. Jones, 45 How. Prac. 498; 27 Albany Law Journal, 508; Lents v. Craig, 13 How. Prac. 72; Id., 2 Abb. Prac. 294; Thomas on Mortgages (3d. Ed.) § 988. The judgment of foreclosure cannot be executed by a private sale. Ely v. Matthews, 128 App. Div. 515, 112 N. Y. Supp. 788; Vannerson v. Cord, Smedes & M. Ch. 345.

The only manner in which a deficiency judgment on the bond or against a purchaser for refusing to comply with the terms of sale can be determined is by a public sale. Nesbit v. Knowlton Hall Co., 45 Misc. Rep. 513, 92 N. Y. Supp. 761. These reasons and cases leave little doubt but that the referee was without power to resell without readvertising and reposting. The distinctive features of a public sale are advertisement published in a newspaper, notices posted in public places, exposure for sale of the thing to be sold in a public place. A sale not having such features could not be a public sale. The vice in the sale at the referee's office is that it was a private sale.

[4] The third question is: Had Philip the right to complain of the sale? It may be claimed that, having refused to complete his purchase and being excused from payment of a deficiency by the order vacating the stay, he is in no position to challenge the validity of the resale. I think the matter jurisdictional. There was no authority for the sale had, nor for the acceptance of any other bid after the day of the first sale. May v. May, 11 Paige, 202. Philip did nothing after the sale of the 25th of April to waive his right to bid.

The order vacating the stay, as far as it excused Philip from the payment of a deficiency is vacated. The sale is set aside, the deed canceled, and a resale ordered. If less shall be realized than $28,000 at the resale, application may be made to the court to fix the liability and amount of deficiency which Philip should be required to pay because of failure to complete his purchase on the original sale. The purchaser at the office sale should be repaid out of the proceeds of the resale moneys necessarily spent in opening and placing in readiness the railroad for operation. The same referee is appointed. Order may be settled June 24th, 10 a. m., in Supreme Court chambers, courthouse, Kingston, N. Y.