William Palmatier, as Substituted Trustee, etc., Plaintiff, *v.* The Catskill Mountain Railway Company et al., Defendants.

(Supreme Court, Greene Special Term, February, 1918.)

Foreclosure — of mortgages — referee's fees on sale — real property — costs — surplus — Code Civ. Pro. §§ 3297, 3307(7).

Under section 3297 of the Code of Civil Procedure the referee on a sale in foreclosure is entitled to the same fees and disbursements as are allowed to a sheriff on a sale of real

property under a judgment, and where the property is sold for $10,000, or more, the limit of fifty dollars does not apply and the referee may receive such additional compensation as to the court may seem proper.

Where premises sold in foreclosure are located in a county where the sheriff under section 3307(7) of the Code of Civil Procedure is entitled to three per cent upon the proceeds of a sale of real property under a judgment not exceeding $250, and two per cent upon the residue of such proceeds, the referee to sell in the foreclosure action is entitled to the same amount to be computed only upon the cash received by him.

Where the purchaser at a sale in foreclosure refuses to complete his purchase and there is a resale of the premises by order of the court he is liable for the costs and expenses of the resale, less the amount of the surplus arising thereon over that bid on the first sale.

Motion to tax costs and expenses of a resale of mortgaged premises and to determine as to their payment.

Osborn, Bloodgood & Wilbur, for motion.

James P. Philip, in person, opposed.

CHESTER, J.　The mortgaged premises directed by the judgment herein to be sold were put up for sale pursuant to the judgment on April 17, 1916. They were struck off to James P. Philip as the highest bidder for $28,000. Upon being so struck off, Philip signed a memorandum of his purchase and paid to the referee ten per cent of the purchase price as required by the terms of sale. Such terms required the residue of the purchase price to be paid to the referee at his office on the 25th day of April, 1916. The terms of sale contained the usual provision that the bidding would be kept open after the premises had been struck off and, in case the purchaser failed to comply with the terms of sale, the premises so struck off to him would be again put up for sale under the direction of the

referee under the same terms of sale, without application to the court. The terms of sale contained the further provision "that such purchaser will be held liable for * * * any costs or expenses occurring on such resale." Philip refused to pay the residue of the purchase money and complete his purchase on April 25, 1916, as required by said terms of sale signed by him, and the premises were thereupon put up for resale by the referee at the time and place of such default and were struck off to Eben E. Olcott and others for the sum of $28,000, and the referee's deed was thereupon executed to them on their payment of such purchase price. Thereafter Philip on due notice procured an order setting aside such resale on the ground among others that there had been no advertisement of such resale. That order was settled July 27, 1916. The order directed restitution to the purchasers and that the premises be again advertised for sale pursuant to the judgment and that Philip be held liable for the costs and expenses of such further sale. The plaintiff took an appeal from such order to the Appellate Division where it was affirmed and a further appeal to the Court of Appeals where it was also affirmed. *Matter of Philip,* 95 Misc. Rep. 709; 176 App. Div. 925; 220 N. Y. 644. After the decision of the Court of Appeals, the mortgaged premises were readvertised by the referee and were resold by him on April 23, 1917, to one Eli Joseph, for $28,300, Philip appearing on such resale and bidding up to the sum of $28,250. Philip thereafter made a motion for an order striking out from the order of July 27, 1916, the requirement "that the said James P. Philip be held liable for the costs and expenses of such resale." That motion was denied January 5, 1918, and no appeal has been taken from the order of denial.

The question of the liability of Philip for these costs

and expenses has thus been determined against him, but the questions remain as to their amount and as to whether Philip is entitled to a credit for the $300, the amount received on the last sale over and above the amount bid by him when the property was struck down to him.

There is no substantial difficulty in fixing the amount of the costs and expenses on the resale. The fees and disbursements of the referee on the sale of premises in foreclosure are prescribed by section 3297 of the Code of Civil Procedure. It is there provided that he is entitled to the same fees and disbursements as those allowed to a sheriff on a sale of real property under a judgment, and where the property is sold for $10,000, or upwards, the limit of $50 does not apply and the referee may receive such additional compensation as to the court may seem proper. A sheriff in the county where these premises are located is entitled under subdivision 7 of section 3307 of such Code to three per cent upon the proceeds of sale not exceeding $250 and two per cent upon the residue of such proceeds. The referee should, therefore, have the same amount, but this can be computed only upon the cash received by him. *Hosmer* v. *Gans,* 14 Misc. Rep. 229. It appears here that the referee received in cash on the resale $17,830. Computing his percentage at three per cent on $250 of this amount and two per cent on the remaining $17,580 makes $359.10. His printing disbursements on the last sale were $24.38 and he is also entitled to $2 for advertising the sale, making a total of $385.48 which I fix as the amount of the costs and expenses of the resale.

The question as to whether or not Philip is entitled to a credit for $300, the surplus received on the resale over the amount he bid when the property was first put up, is not free from difficulty. The terms of sale

which he signed provided that he should be "held liable for any deficiency there may be between the sum for which said premises and property shall be struck off upon the present sale and that for which they may be purchased on a resale and also any costs or expenses occurring on such resale." While these terms clearly provide as to the obligation of a purchaser in case of a deficiency, they are silent as to his rights in the event of a surplus. The plaintiff insists that because of the long delay occasioned by the appeal from the order setting aside the first resale and the consequent additional loss of interest falling upon the bond-holders, Philip is not equitably entitled to any benefit from such surplus. That appeal, however, was not taken by him. It was an appeal by his adversary from an order which Philip procured setting aside such resale and directing that the property should again be put up for sale. It would seem, therefore, that the delay which caused this loss of interest cannot fairly be chargeable to him. I know of no authority where the question presented has been decided and none has been called to my attention by counsel in the case. It appears that Philip expressly made himself liable for a deficiency by signing the terms of sale and it would seem that the fair inference from that would be that he should be entitled to the benefit of any surplus that might arise in the absence of any conduct on his part making such a result inequitable. It is an old and familiar saying that it is a poor rule that does not work both ways. That principle as applied to a case like this has been recognized by some of the text book writers. In Jones on Mortgages, sixth edition, section 1642, it is said: "When the purchaser of property at a mortgage sale makes default in payment and the property is resold, under an order of court at his risk, he is entitled to any excess in the proceeds at the

resale just as he is responsible for any deficiency.'' I see no reason why that principle should not govern here; applying it Philip should be held liable for $385.48, the costs and expenses of the resale as above indicated, less the sum of $300, the surplus arising on the resale over that bid on the first sale, leaving a balance of $85.48 to be paid by him.

As the plaintiff claimed that Philip was not entitled to any part of the $300 and as Philip denied all liability, no costs should be allowed to either party. ·

Ordered accordingly.